Brinkerhoee, J.
Peter Bailey brought his action against the Bellefontaine and Indiana Railroad Company, before a justice of the peace of Darke county, to recover damages for the killing of his two horses, through the carelessness and negligence of the employees of the railroad company in running their locomotive and cars. From the judgment of the justice of the peace, an appeal was taken to the common pleas of that county ; and to the petition of Bailey, alleging that the horses straying upon the track of the railroad, were killed by the negligence of the company’s servants in running the locomotive and cars of the company, the company answered simply denying the negligence charged.
The case in the common pleas was tried to a jury, which resulted in a verdict and judgment for Bailey. To reverse this judgment of the common pleas, a petition in error was prosecuted in the district court of Darke county; but the district court affirmed the judgment of the common pleas; and to reverse that judgment of affirmance, this petition in error is prosecuted.
1. On the trial of the case in the common pleas, it appeared from a bill of exceptions embodied in the record, that the defendant, “ to maintain the issue joined on its part, called to the stand, as a witness, Aloah Skilton, who testified that he was acting as locomotive engineer on the train which killed the horses for which this action was brought, at the time of said killing, and saw said horses in the act of coming upon the railroad track; that he was acquainted with the business of running railroad engines and trains, and had been engaged in the business for the last five years. The defendant’s counsel then asked said witness his opinion as to the possibility of avoiding the injury to the said horses, in view of the distance between the train and the plaintiff’s horses when the latter came upon the railroad track? To which question the plaintiff objected; which objection the court sustained, and *335 refused to allow the question to be answered ; to which decision of' the court the defendant excepted.”
That the running and management of railroad locomotives and trains is so far an art, outside óf the experience and knowledge of ordinary jurors, as to render the opinions of persons acquainted with the running and management of such locomotives and trains, as experts, admissible and proper testimony, in proper cases, is very clear on principle, and is so recognized in Quimby v. Vermont Central Railway, 23 Vt. R. 394, and Illinois Central Railway v. Ready 17 Ill. R. 580.
The qualifications of the witness, in this case, to testify as an expert, -were, prima facie at least, sufficiently established by the preliminary examination.
Was the question put to him, competent and proper? Ho was asked his opinion, in view of the distance between the train and the horses, when-they came upon the track, as to the possibility of avoiding the injury to the horses. And first, as to the form of the question. On this point the case of Beckwith v. Sydebotham, 1 Camp. 116, is an authority. That was an action on a policy of insurance; and the defense was, that the ship insured was, at the time of insurance, unseaworthy. Evidence as to the condition of the ship at that time having been given in the hearing of an expert in such matters, the defendant offered, in evidence, the opinion of such expert, that a ship in the condition the ship in question was sworn to be in, could not be seaworthy. It was objected that “this was an inference which it was for the jury to draw, if the facts would warrant it; ” and counsel “pointed out the prejudice that might arise from asking the opinion of a witness, on a statement which might be false.” But, Lord Mlenborough held, “ that this was like examining a physician or surgeon, to say, whether upon such and such symptoms, a person whose life was insured could, at the time of the insurance, have been in a good state of health. Where there was a matter of skill or science to be decided, the jury might be assisted by the opinion of those peculiarly acquainted with it, from their professions or pursuits. As the truth of the facts stated to them were not certainly known, *336 the opinion might not go for much; but still it was admissible evidence. And the prejudice alluded to, might be removed by asking, in cross-examination, w’hat the witness would think on the statement of facts contended for on the other side.”
Still more directly in point, is the case of Fenwick v. Bell, 1 Cas. & Kir. 312 (47 E. C. L. 311), which was a case for running down the plaintiff’s ship; and in which it was held, that “ a nautical witness may be asked, whether, having heard the evidence, and admitting the facts proved by the plaintiff to be true, he is of opinion that the collision could have been avoided by proper care on the part of defendant’s servants.”
In the subsequent case, however, of Sills v. Brown, 9 C. & P. 601, which was also a ease for running down the plaintiff’s vessel, and the witness, an expert, was asked, “whether, having heard the evidence, he thought the conduct of the captain of the defendant’s vessel was right or not,” Coleridge, J., held the question to be inadmissible. But the holding in this latter case, does not seem to have met the approval of the profession. See note to Fenwick v. Bell, in 47th E. C. L. and Redfield on Railways, 398, note. And the distinction, as to the form of the question, on which the holding in Sills v. Brown proceeded, seems to us to be a distinction without a difference. In substance, where is the difference between asking a witness thus — supposing the situation of the vessels to be so and so, “ was the conduct of the captain of the defendant’s vessel, right or not ? ” or, supposing the situation of the vessels to be so and so, “ what ought the captain of the defendant’s vessel to have done ? ” Or, in the case before us, where is the substantial difference between asking the witness, whether, in view of the distance between the train and the horses, when they came on the track, there was or not a possibility of avoiding the injury to them, and asking him, in view of such distance, 'to state what would have been the effect if the utmost possible efforts had been made to check the train, or otherwise to avoid the collision?
The objection that the witness is put in the place of the *337 jury, and is made to perform tbeir proper function, applies, so far as it has any foundation at all, to all testimony of this-kind. The truth is, as is well remarked by Mr. Redfield in the note above referred to, the testimony of scientific wit nesses and experts, is a sort of education of the jury, upon: subjects in regard to which they are not presumed to be properly instructed; and they at last, are entitled and required to pass upon the weight and credit to be attached to the opinions given them, weakened or strengthened, as they may be, by the sifting process of cross examination, and by counter or corroborating testimony.
It is objected, in the second place, that the question put to the witness does not suppose or assume a state of facts on which his opinion was to be based.
Undoubtedly, if the witness had been a stranger to the actual facts, it would then have been necessary to assume a state of facts as the foundation of any opinion he might give; but no such assumption, it seems to us, is necessary when the witness is, or is properly presumed to be, himself personally acquainted with the material facts of the case. The witness here was himself the engineer of the locomotive, by which the injury was done; he saw the horses when they came upon the track; and we think it is fairly presumable that he knew something of the distance between the engine and the horses when they came upon the track; the velocity and weight of the train ; the character of the grade ; the means of checking ihe velocity of the train; and the time and distance -which would be required to check the progress of, or stop the train. If an expert may give his opinion on facts testified to by others, we see no reason why he may not do so on facts presumably within his own personal knowlege ; and if his knowledge of any material fact be wanting or defective, the parties have ample opportunity to show it by cross examination, and by testimony aliunde. A physician or surgeon, called on to give an opinion as to the state of health, or the cause of the death of any person, and having no personal knowledge of that person’s symptoms, must of necessity testify hypothetically from assumed or supposed symptoms; but surely the *338 attending physician or surgeon of the patient, having himself the best opportunity of personally knowing his symptoms and condition, is not, in the first instance presumed to be under any such necessity. The question before us is, in principle, it seems to us, the same; and we think the common pleas erred in refusing to allow the question to be answered.
2. Again, it appears from the bill of exceptions, that “ after the evidence and arguments in behalf of both parties had been concluded, the defendant asked the court to charge the jury, that if they should believe that the servants of the railroad company, in charge of said locomotive and train, did not usu ordinary care in running the same to avoid the injury to plaintiff’s horses, for which this action was brought, the plain tiff must still fail in the action, provided the jury also believe, from the evidence, that such care if it had been used, would not have prevented the said injury ; which charge the court refused to give; and to which refusal the defendant excepted."
We are of opinion that this refusal to charge the jury as requested was clearly erroneous. In order to make out a prima facie case, it was necessary for the plaintiff to establish to the satisfaction of the jury, two propositions- of fact; first, that the servants of the company in charge of the train, were guilty of negligence; and second, that the injury complained of was caused by such negligence. The establishment of the latter proposition was as essential to the right of recovery as the former. For, if the negligence did not cause the injury, then, whether it was the result of the plaintiff’s own negligence, the fault of a third party, or the result of sheer accident, the defendant was not responsible.
It is urged in argument, that whatever may be the opinion of this court as to the propriety of refusing to allow the question put to the witness to be. answered, and refusing to give the charge requested by defendant, in a proper case ; yet such refusals do not constitute good ground of error in this case, for the reason that the bill of exceptions does not show such refusals to have-been material in the determination of the case.
But it seems to us that the question asked the witness, and *339 the charge to the jury requested from the court, go so directly to the essence of the issue between the parties, and to the questions necessarily involved in the case, that they could not be otherwise than material.
The judgment of the district court and of the common pleas will be reversed, and the cause will be remanded to the common pleas for further proceedings.
Scott, C.J., and Sutliee, Peck and Gholson, JJ., concurred.